UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIE CLAIRE AYOUB, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 15-cv-13218-ADB |
| CITIMORTGAGE, INC., | * |
| Defendant. | * |

## MEMORANDUM AND ORDER ON MOTION TO DISMISS

BURROUGHS, D.J.

Plaintiff Marie Claire Ayoub filed this action against her current mortgage servicer, Defendant CitiMortgage, Inc., based on the denial of her applications for a loan modification. Currently pending before the Court are Plaintiff's request for a preliminary injunction, as set forth in the operative Complaint [ECF No. 37], and Defendant's motion to dismiss for failure to state a claim. [ECF No. 44]. For the reasons that follow, the request for a preliminary injunction is DENIED and Defendant's motion to dismiss is GRANTED as to Count II and DENIED as to Counts I and III.

**I.    BACKGROUND**

In evaluating Defendant's motion to dismiss, the Court accepts the well-pleaded allegations as true. See Ruivo v. Wells Fargo Bank, 766 F.3d 87, 90 (1st Cir. 2014). Plaintiff has attached several documents to the Complaint, which the Court may consider as part of the pleadings. See Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008); Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008). The Court may also look to documents that

1

are central to Plaintiff's claim and documents sufficiently referred to in the Complaint. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).

On September 30, 2005, Plaintiff obtained a loan for $288,000 from First Franklin, Inc. ("First Franklin"), which was secured by a mortgage on her home in Methuen, Massachusetts. Compl. ¶¶ 4, 6. First Franklin represented to Plaintiff that she was entering into a fixed-rate mortgage at 5.25%. The mortgage was, in actuality, a "predatory" two-year adjustable-rate mortgage with a fully indexed rate of 13%. Id. ¶¶ 7−8. Once adjusted to the fully indexed rate, her monthly mortgage payments exceeded 50% of her and her husband's monthly household income, and the loan amount equaled or exceeded the value of the property. Id. ¶¶ 9−10. Plaintiff eventually defaulted on the mortgage. Id. ¶ 12.

On February 16, 2013, Plaintiff applied to Defendant for a loan modification through the Home Affordable Modification Program ("HAMP"). Id. ¶ 13. HAMP was a sub-part of the Troubled Asset Relief Program, which delegated broad powers to the Secretary of the Treasury Department "to mitigate the financial impact of the foreclosure crisis and preserve homeownership." Bosque v. Wells Fargo Bank, N.A., 762 F. Supp. 2d 342, 346−47 (D. Mass. 2011). HAMP was intended to "provide relief to borrowers who [had] defaulted on their mortgage payments or who [were] likely to default by reducing mortgage payments to sustainable levels, without discharging any of the underlying debt." Id. at 347. Mortgage servicers, including Defendant, Compl. ¶ 59, entered into Servicer Participation Agreements with the government, pursuant to which they "agreed to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 228−29 (1st Cir. 2013) (quoting Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547, 556 (7th Cir. 2012)). The

Treasury Department issued "a series of directives that provide guidance to servicers implementing HAMP." Bosque, 762 F. Supp. 2d at 347; see Charest v. Fed. Nat'l Mortg. Ass'n, 9 F. Supp. 3d 114, 125 (D. Mass. 2014) ("HAMP guidelines impose a series of detailed obligations on participating servicers . . . in processing an application for a loan modification").

To be eligible for HAMP, "the mortgage must be a first lien mortgage that originated on or before January 1, 2009, the mortgage must be delinquent or default [must be] reasonably foreseeable, the current unpaid principal balance must be less than a certain amount of money for a given type of property, the required monthly payments on the mortgage must exceed 31% of the homeowner's monthly income, and the property must not be condemned." Regal v. Wells Fargo Bank, N.A., 205 F. Supp. 3d 195, 202 (D. Mass. 2016). "If the servicer determines that the borrower's mortgage meets those criteria, the servicer must also subject each applicant's information to Net Present Value (NPV) Testing." Id. (citation and quotation marks omitted). The NPV test "uses a number of inputs to determine whether a loan modification would create greater financial value than a foreclosure sale." Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 260 n.3 (D. Mass. 2011). "If the borrower appears to qualify under the HAMP guidelines, he or she is given a document entitled Home Affordable Modification Trial Period Plan (TPP)." Durmic v. J.P. Morgan Chase Bank, NA, No. 10−10380, 2010 WL 4825632, at *1 (D. Mass. Nov. 24, 2010). A TPP initiates a "period during which the [borrower] is to make the modified mortgage payments." In re JPMorgan Chase Mortg. Modification Lit., 880 F. Supp. 2d 220, 226 (D. Mass. 2012). If the borrower successfully completes the TPP, "the servicer offers the [borrower] a permanent mortgage modification." Id.

On July 16, 2013, Defendant informed Plaintiff by telephone that her application was denied, because the HAMP guidelines "could not create an affordable payment for her income."

3

Compl. ¶ 17; [ECF No. 37-2]. Plaintiff appealed the decision on the grounds that she plainly satisfied the HAMP eligibility requirements. Compl. ¶¶ 14–16. On July 29, 2013, Defendant affirmed the denial of her application, but with little to no explanation of its reasoning. Id. ¶¶ 17–19; [ECF Nos. 37-2, 37-3]. In support of the motion to dismiss, Defendant filed a copy of a notice letter to Plaintiff dated July 31, 2013, stating that she was denied for the following reason: "Application Discrepancy: we are unable to offer you a [HAMP modification] because there was an irreconcilable discrepancy with your application request." [ECF No. 45-1]. The letter further stated that Defendant considered Plaintiff's IRS Form 4506-T and most recent profit and loss statement in reaching its decision. Id. On April 28, 2014, Plaintiff sent Defendant a written demand for a HAMP modification, pursuant to Mass. Gen. Laws ch. 93A ("Chapter 93A"), based on the predatory terms of her mortgage and her eligibility for a loan modification. Compl. ¶ 21; [ECF No. 37-4]. Defendant disputed Plaintiff's arguments therein and did not provide a reasonable settlement offer in response. Compl. ¶ 22.

About one year later, on June 3, 2014, Plaintiff submitted a second HAMP application to Defendant. Id. ¶ 23. On June 26, 2014, Defendant requested that Plaintiff supplement her application with additional documents that Plaintiff alleges were already included with her second application or were not required under the HAMP guidelines. Id. ¶¶ 24–25. The June 26 request sought the following from Plaintiff: (1) original bank statements from the past two months; (2) resubmission of IRS Form 4506-T, because Plaintiff's prior form contained an illegible or missing social security number; (3) homeowner's association dues statement or a letter indicating that there were no applicable dues; (4) paystubs from the past 30 or 45 days, because her documents on file were incomplete or illegible; (5) business and personal tax returns for the year 2012; (6) a contribution letter from Plaintiff's husband; and (7) a profit and loss

statement for any additional household income that listed the business or owner's name and business income and expenses. [ECF No. 37-5].

On July 31, 2014, Defendant requested another set of documents that, according to Plaintiff, had also been provided with Plaintiff's second application. Compl. ¶ 28; [ECF No. 37-6]. Although Plaintiff resubmitted IRS Form 4506-T in response to the June 26 request, the July 31 request again sought a new IRS Form 4506-T, ostensibly because Plaintiff's most recent submission included a different address than on her original form. [ECF No. 37-6]. The July 31 request also asked for updated income and bank statements, to the extent that Plaintiff had received any such documents since filing her application, and a profit and loss statement of additional household income. Id.

On September 22, 2014, Defendant issued a third request for documents that Plaintiff again states had already been provided to Defendant, including: (1) a request for mortgage assistance form ("RMA") or hardship affidavit, because the document on file had expired; (2) the four most recent paystubs from Plaintiff's husband, because the documents on file had expired; (3) a profit and loss statement with itemized business expenses; (4) a signed and dated August 2014 profit and loss statement; (5) bank statements for July to August 2014 and August to September 2014; (6) a letter explaining why Plaintiff's or her husband's self-employment income was not reflected on their tax returns; (7) 2012 to 2013 business tax returns; and (8) the three most recent business bank statements. Compl. ¶ 31; [ECF No. 37-8]. Plaintiff sent emails to Defendant on October 20, November 17, and December 1, 2014, seeking an update on the status of her application, but received no response. Compl. ¶¶ 32−33; [ECF No. 37-9].

On January 7, 2015, Defendant denied Plaintiff's second HAMP application due to a "quality application discrepancy." Compl. ¶ 35; [ECF No. 37-10]. On January 18, 2015, Plaintiff

sent Defendant a second written demand under Chapter 93A, but Defendant again did not respond with a reasonable settlement offer. Compl. ¶ 38; [ECF No. 37-11].

On July 9, 2015, Plaintiff initiated this lawsuit in Massachusetts Superior Court, and Defendant removed the case to this Court on August 24, 2015. [ECF Nos. 1, 5]. On or around September 12, 2015, in connection with the parties' efforts to resolve this action, Plaintiff filed a third HAMP application. Compl. ¶ 41; [ECF No. 6]. On December 1, 2016, Defendant denied the application due to an "irreconcilable discrepancy within her application." Compl. ¶ 42. The notice of the denial of her application did not further explain the basis for the decision. [ECF No. 37-13]. On January 3, 2017, Plaintiff sent a written demand under Chapter 93A asking that Defendant offer her a TPP. Compl. ¶¶ 43−45, 47.

As a result of Defendant's conduct, Plaintiff alleges that she will lose her home, and has already lost equity, suffered damage to her credit rating, and accumulated unnecessary mortgage arrearages. Id. ¶¶ 39, 75. She requests judgment in her favor on all counts, the issuance of a preliminary injunction enjoining the scheduling of any foreclosure on her home during the pendency of this action, and a declaration of the rights and liabilities of the parties pursuant to Mass. Gen. Laws ch. 231A.

## II. LEGAL STANDARD

To evaluate a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." A.G. ex rel. Maddox v. v. Elsevier, Inc., 732 F.3d 77, 80 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)). The complaint must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," and should "contain 'enough facts to state a claim to relief

that is plausible on its face.'" Maddox, 732 F.3d at 80 (quoting Fed. R. Civ. P. 8(a)(2) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability." Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Id. at 44 (quoting Iqbal, 556 U.S. at 679). "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 14 (1st Cir. 2011)). "The plausibility standard invites a two-step pavane." Maddox, 732 F.3d at 80. First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)). Secondly, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III. DISCUSSION

### A. Chapter 93A Claims (Counts I and III)

Plaintiff asserts two counts (Counts I and III) for violations of Chapter 93A. Count I stems from Plaintiff's first and second HAMP applications, and Count III derives from her third HAMP application. Both counts are premised on the denial of those applications without proper justification and Defendant's delay and obstruction of the application review process. To prevail on a Chapter 93A claim, Plaintiff must prove (1) "that a person who is engaged in trade or business committed an unfair or deceptive trade practice," and (2) "that the [plaintiff] suffered a

7

loss of money or property as a result." Morris, 775 F. Supp. 2d at 259 (quoting Brandon Assocs. v. FailSafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 446 (D. Mass. 2005)).

1.   Unfair or Deceptive Conduct

Although there is no precise test for determining whether conduct is unfair or deceptive, "Massachusetts courts have laid out a number of helpful guideposts." Hanrahran v. Specialized Loan Servicing, LLC, 54 F. Supp. 3d 149, 154 (D. Mass. 2014). "Under Chapter 93A, an act or practice is deceptive 'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'" Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 486–87 (Mass. 2004)). "[A]n act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness;' 'is immoral, unethical, oppressive, or unscrupulous;' and 'causes substantial injury to consumers,'" and the "conduct must generally be of an egregious, non-negligent nature." Id. (quoting PMP Assocs. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). "Both the defendant's and the plaintiff's conduct, knowledge, and what they should have reasonably known may be factors in determining whether an act or practice is unfair." Hanrahran, 54 F. Supp. 3d at 154 (citing Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 38 (1st Cir. 2008)).

"HAMP violations can give rise to a viable [Chapter 93A] claim if the activity would be independently actionable under Chapter 93A as unfair and deceptive." Morris, 775 F. Supp. 2d at 256. The relevant inquiry is:

> (1) [has Plaintiff] adequately plead that [D]efendant violated HAMP; (2) are those violations of the type that would be independently actionable conduct under [C]hapter 93A even absent the violation of a statutory provision (*i.e.* are the violations unfair or deceptive); and (3) if the conduct is actionable, is recovery

pursuant to [C]hapter 93A compatible with the "objectives and enforcement mechanisms" of HAMP?[1]

Ording v. BAC Home Loans Servicing, LP, No. 10−10670, 2011 WL 99016, at *7 (D. Mass. Jan. 10, 2011) (quoting Whitehall Co. v. Merrimack Valley Distrib. Co., 780 N.E.2d 479, 483 (Mass. App. Ct. 2002)). Plaintiff "must plead more than that the HAMP guidelines were violated; [she] must plausibly allege that [Defendant's] actions were unfair or deceptive." Morris, 775 F. Supp. 2d at 262; Saade v. Pennymac Loan Servs., LLC, No. 15−12275, 2016 WL 4582083, at *7 (D. Mass. Aug. 31, 2016), adopted by, 2016 WL 6089684 (D. Mass. Oct. 17, 2016) ("not every technical violation of HAMP" exposes a servicer to Chapter 93A liability). "The few Chapter 93A claims that have survived motions to dismiss have alleged a pattern of misrepresentations, failure to correct detrimental errors, and/or dilatory conduct on the part of the servicer and/or bank that the courts have found could amount to unfair or deceptive practices." Okoye v. Bank of N.Y. Mellon, No. 10−11563, 2011 WL 3269686, at *9 (D. Mass. July 28, 2011). Accordingly, while each alleged action by Defendant might not amount to a Chapter 93A violation alone, "the relevant conduct is the entirety of [Defendant's] actions, not each action viewed in isolation." Hannigan v. Bank of Am., N.A., 48 F. Supp. 3d 135, 142 (D. Mass. 2014).

When viewed in the light most favorable to Plaintiff, the pleadings plausibly state, albeit barely, unfair or deceptive practices under Chapter 93A. Defendant took months longer than the 30 days alotted under the HAMP guidelines to rule on Plaintiff's initial application, Charest, 9 F. Supp. 3d at 125, and then denied it based on a purported miscalculation of her financial

---

[1] With respect to the third prong, district courts in this Circuit have uniformly found that recovery under Chapter 93A is compatible with the objectives and enforcement mechanisms of HAMP. See Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 262−63 (D. Mass. 2011); Charest v. Fed. Nat'l Mortg. Ass'n., 9 F. Supp. 3d 114, 126 (D. Mass. 2014); Regal v. Wells Fargo Bank, N.A., 205 F. Supp. 3d 195, 203 (D. Mass. 2016).

eligibility. When Plaintiff applied for a second time in June 2014, Defendant issued a denial after seven months. While her second application was pending, Defendant made three separate requests for supplemental submissions from Plaintiff, each of which sought a different set of documents that she had already included with her application. See Hanrahran, 54 F. Supp. 3d at 155 (denying motion to dismiss where the servicer "claimed that certain documents were missing from her application, which was not true"); Hannigan, 48 F. Supp. 3d at 142 (denying motion to dismiss where, although plaintiffs' allegations were not "paragons of detail," they were more than conclusory given that "plaintiffs applied numerous times for a modification under HAMP and [the servicer] repeatedly required that they re-submit information that they had previously provided"); Moreira v. CitiMortgage, Inc., No. 15−13720, 2016 WL 4707981, at *3 (D. Mass. Sept. 8, 2016) (denying motion to dismiss where plaintiff alleged that defendant "repeatedly requir[ed] him to resubmit the same documents over and over again and provide repeated explanations over the contents of his application"). Although the Complaint does not allege that she attempted to satisfy these document requests, certain attachments to the Complaint suggest that she made an effort to do so. See [ECF No. 37-11] (Plaintiff's Chapter 93A demand letter stating that in response to the third document request, she "submitted three separate e-mails on September 30, 2014, October 3, 2014, and October 8, 2015, which included another copy of an RMA and a letter of explanation"). It is at least plausible that Defendant needlessly and repetitively requested additional documents to overburden Plaintiff, and delayed reviewing her application until her prior document submissions purportedly expired, thereby necessitating more document requests.

Plaintiff has also sufficiently alleged that Defendant repeatedly provided ambiguous and opaque explanations for denying her applications. See Regal, 205 F. Supp. 3d at 203 (servicer

10

was "obligated to provide [plaintiff] with a detailed explanation of why it denied her original HAMP application"). Defendant denied each of her applications as follows: (1) "Application Discrepancy: we are unable to offer you a [HAMP modification] because there was an irreconcilable discrepancy with your application request;" (2) "quality application discrepancy;" and (3) "irreconcilable discrepancy within your application request." Defendant's notices of denial did not provide additional detail or explanation with regard to the nature of these discrepancies. See Moreira, 2016 WL 4707981, at *4 (denying motion to dismiss where defendant penalized applicant "for an unexplained 'irreconcilable discrepancy,' even though [the applicant] provided extensive documentation regarding his income"); Hanrahran, 54 F. Supp. 3d at 156 (denying motion to dismiss where defendants rejected HAMP application "for doubly dubious reasons, falsely stating that she was missing documents and failed to respond to one of their notices").

Even assuming, *arguendo*, that "application discrepancy," "qualified application discrepancy," and "irreconcilable discrepancy" are valid bases for denying a HAMP application, Plaintiff has plausibly alleged that merely stating that there was a discrepancy without further explanation violated the HAMP guidelines and prevented Plaintiff from taking corrective action or from addressing the discrepancy on appeal or in subsequent applications. See Making Home Affordable Program: Handbook for Servicers of Non-GSE Mortgages, Version 5.1, dated May 26, 2016, p. 229, https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/ mhahandbook_51.pdf (suggesting the following sample clause for use in responding to borrowers, which reflects "a level of specificity deemed to be in compliance" with HAMP: "Application Discrepancy. We are unable to offer you a Home Affordable Modification because [provide a description of the discrepancy]"); see also Moreira, 2016 WL 4707981, at *4 (noting

11

unfairness of defendant waiting until after applicant's appeal was denied to explain "irreconcilable discrepancy").

As indicated above, the pleadings cross the plausibility threshold by a narrow margin. Plaintiff has not alleged that Defendant misrepresented her "eligibility for a loan modification," Charest, 9 F. Supp. 3d at 126, "the status of their HAMP application, [her] rights under HAMP, or [her] eligibility for a permanent loan modification." Stagikas v. Saxon Mortg. Servs., Inc., No. 10−40164, 2013 WL 5373275, at *4 (D. Mass. Sept. 24, 2013); see also Bosque, 762 F. Supp.2d at 353−54 (same). Plaintiff also does not claim that Defendant foreclosed, or attempted to foreclose, on her property. See, e.g., Markle v. HSBC Mortg. Corp. (USA), 844 F. Supp. 2d 172, 186 (D. Mass. 2011) ("Allegations that defendants . . . misrepresented to plaintiffs the likelihood or imminency of foreclosure; or actually conducted a foreclosure sale in violation of HAMP guidelines have been found sufficiently unfair or deceptive to state a claim under [C]hapter 93A.").

Further, the attachments to the Complaint partially contradict Plaintiff's contention that Defendant's document requests were redundant or needless. Although Plaintiff refutes Defendant's assertion that her IRS Form 4506-T had an illegible or missing social security number, and she attached the IRS Form 4506-T to her initial complaint as evidence, on its face, that attached form is at least difficult to read.[2] [ECF No. 5 at 51]. Moreover, Defendant appears to have sought at least some relevant documentation related to the income of Plaintiff's husband, including a written explanation as to why his self-employment income was not reflected on their

---

[2] Because it is not clear from the record whether the IRS Form 4506-T in the record is an accurate copy of the form submitted to Defendant, the Court accepts Plaintiff's representations that her initial IRS Form 4506-T was legible and that her second IRS Form 4506-T did not provide a different address.

tax returns.[3]

Although Defendant may ultimately be able to show that it had a sound basis for seeking supplemental documentation, that it identified relevant concerns with Plaintiff's applications, or that it provided more detailed information to Plaintiff regarding its decision making, based on the pleadings, the Court cannot conclude that Plaintiff has failed to plausibly state a claim. Viewed in the light most favorable to Plaintiff, Defendant misjudged her HAMP eligibility, took months to make a determination on her applications, overburdened her with unnecessary and duplicative document requests, and denied her applications without providing any discernible explanation. Defendant's actions plausibly amount to "more than a minor delay or clerical error," and may constitute actionable HAMP violations under Chapter 93A. Hanrahran, 54 F. Supp. 3d at 156.

   2.   Injury

Defendant also challenges whether Plaintiff has sufficiently pleaded that Defendant injured her. The First Circuit has held that allegations of "repeated mistakes during the forbearance and loan modification process [that] subjected Plaintiff to loss of equity in her home and damage to her credit ratings" plausibly pleaded an injury under Chapter 93A. Young, 717 F.3d at 241. Allegations of "increased interest on the debt, a negative impact on plaintiff's credit history, and the loss of other economic benefits of the loan modification" have also been found sufficient. Stagikas v. Saxon Mortg. Servs., Inc., 795 F. Supp. 2d 129, 137 (D. Mass. 2011); see Hanrahran, 54 F. Supp. 3d at 156 (damages were sufficiently stated where plaintiff allegedly faced higher monthly payments, "accumulation of interest, damage to her credit, and assessment of late payment charges—costs that she would not have suffered if [the servicer] had granted her

---

[3] The tax returns attached to the initial complaint as part of her second HAMP application do not appear to reflect any self-employment income. [ECF No. 5 at 111−127].

HAMP relief or at least denied her application on a timely basis"); Dill v. Am. Home Mortg. Servicing, Inc., 935 F. Supp. 2d 299, 306 (D. Mass. 2013) (allegations of damages properly included "fees incurred to avoid foreclosure and harm to Plaintiffs' credit"). The First Circuit in Young rejected the defendants' argument that such allegations were too speculative at the motion to dismiss stage. See Young, 717 F.3d at 241−42 ("At this stage of the proceedings, where [plaintiff] need allege 'only enough facts to make the claim plausible, . . . she has done enough to survive dismissal" (citation and quotation marks omitted)). Here, Plaintiff similarly alleges that Defendant's conduct caused damages including lost equity, damage to her credit, and the additional accumulation of mortgage arrearages. Compl. ¶¶ 39, 75. Therefore, at least at this stage, Plaintiff has sufficiently alleged an injury under Chapter 93A. Accordingly, the motion to dismiss is <u>DENIED</u> with respect to Count I and Count III.[4]

### B. Implied Covenant of Good Faith and Fair Dealing (Count II)

Plaintiff claims that Defendant's HAMP violations and dilatory tactics, as well as the failure to respond to her demand letters with a reasonable settlement offer, breached the implied covenant of good faith and fair dealing. "Under Massachusetts law, '[e]very contract implies

---

[4] Defendant also argues that because Plaintiff filed her third HAMP application in connection with the parties' efforts to resolve this action, Federal Rule of Evidence 408 governing the admissibility of evidence of settlement negotiations bars Count III. Plaintiff responds that Rule 408 is inapplicable because the filing of her third application during the pendency of this case was "purely incidental" to and independent of any settlement negotiations. [ECF No. 49 at 8]. See Am. Bridge Co. v. Providence Place Grp., 263 F. Supp. 2d 330, 336 (D.R.I. 2003) (citing Starter Corp. v. Converse, Inc., 170 F.3d 286, 293 (2d Cir. 1999)) (evidence of a settlement agreement and the surrounding circumstances may be offered "for a purpose other than to prove or disprove the validity of the claims that [the agreement was] meant to settle"). Although it is unclear how the third HAMP application is related to any settlement negotiations, the allegations concerning the third HAMP application are relevant to the overall question of whether Defendant's conduct was unfair and deceptive. At this time, the Court will not dismiss Count III on the grounds of Rule 408 but Defendant may raise this argument on a more fully developed record.

14

good faith and fair dealing between the parties to it,'" which requires that "neither party shall do anything that will have the effect of destroying or injuring the right of the other party to the fruits of the contract." Young, 717 F.3d at 237 (quoting T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 924 N.E.2d 696, 703–04 (Mass. 2010)). "The concept of good faith 'is shaped by the nature of the contractual relationship from which the implied covenant derives,' and the 'scope of the covenant is only as broad as the contract that governs the particular relationship.'" Id. at 238 (quoting Ayash v. Dana–Farber Cancer Inst., 822 N.E.2d 667, 684 (Mass. 2005)). "As a consequence, the implied covenant cannot 'create rights and duties not otherwise provided for in the existing contractual relationship.'" Id. (internal citation omitted); see Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 230 (1st Cir. 2005) ("[T]he implied covenant of good faith and fair dealing governs conduct of parties after they have entered into a contract; without a contract, there is no covenant to be breached.").

Here, Plaintiff fails to identify any contract between the parties as the basis for her claim. As a mortgage servicer that was not a party to the mortgage, Defendant owed "no implied duties to Plaintiff arising out of the mortgage contract." Dill v. Am. Home Mortg. Servicing, Inc., 935 F. Supp. 2d 299, 303 (D. Mass. 2013); see Mudge v. Bank of America, N.A., No. 13−421, 2015 WL 1387476, at *5 (D.N.H. Mar. 25, 2015) ("A mortgage servicer that is not a party to the mortgage contract owes no implied covenant to the mortgagor."). Plaintiff does not attempt to claim that she is a third-party beneficiary of the Servicer Participation Agreement that Defendant entered into with the government, and, in any event, such a theory has been found unavailing. See MacKenzie v. Flagstar Bank, FSB, 738 F.3d 486, 491 (1st Cir. 2013) (quoting Restatement (Second) of Contracts § 313 cmt. a (1981)) ("It is a well-established principle that '[g]overnment contracts often benefit the public, but individual members of the public are treated as incidental

15

beneficiaries [who may not enforce a contract] unless a different intention is manifested.'");
Teixeira v. Fed. Nat'l Mortg. Ass'n, No. 10–11649, 2011 WL 3101811, at *2 (D. Mass. July 18, 2011) ("Although HAMP was generally designed to benefit homeowners, it does not follow necessarily that homeowners like the plaintiffs are intended third-party beneficiaries of the contracts between servicers and the government."). Plaintiff relies on In re Bank of Am. Home Affordable Modification Program (HAMP) Contract Lit., No. 10–02193, 2011 WL 2637222, at *5 (D. Mass. July 6, 2011) in asserting that where Defendant "'encourage[s] or allow[s] employees to make inaccurate representations, all in bad faith and for its own benefit . . . these allegations are sufficient to state a claim'" for breach of the implied covenant. Her reliance on In re Bank of Am. is misplaced because the plaintiffs in that case had plausibly alleged that a TPP was an enforceable contract between the parties. Id. at *3. Here, Plaintiff was never offered nor engaged in a TPP. Her claim for breach of the implied covenant of good faith and fair dealing lacks a contractual basis and shall therefore be dismissed. See Mass. Eye & Ear Infirmary, 412 F.3d at 230 ("Having concluded that no contract exists, there can be no derivative implied covenant of good faith and fair dealing applicable to these parties.").

## IV.     PRELIMINARY INJUNCTION

The Complaint includes a request for a preliminary injunction "enjoining any foreclosure from being scheduled on the Plaintiff's property at any time while this matter is pending." Compl. at 12. The Court employs a four-factor analysis in evaluating a motion for a preliminary injunction. Those factors are: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, *i.e.*, the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public

interest." Esso Standard Oil Co. (Puerto Rico) v. Monroig-Zayas, 445 F.3d 13, 18 (1st Cir. 2006) (internal quotation marks omitted). "The party seeking the preliminary injunction bears the burden of establishing that these four factors weigh in its favor." Id. (internal quotation marks and citation omitted).

"Although the Court has concluded that some of [Plaintiff's] claims survive the [Defendant's] motion to dismiss, it does not necessarily follow that [Plaintiff] has demonstrated a likelihood of success on the merits to warrant the entry of a preliminary injunction." Cryer v. Spencer, No. 11−10654, 2012 WL 892883, at *9 (D. Mass. Mar. 15, 2012). The Court must accept the well-pleaded allegations of the Complaint as true when evaluating a motion to dismiss. Id. On a motion for preliminary injunction, however, "the Court must consider the evidence presented to determine the likelihood of success on the merits." Id. (citing Fritz v. Arthur D. Little, Inc., 944 F. Supp. 95, 102 (D. Mass. 1996)). Here, Plaintiff has not made any attempt to show that the relevant factors weigh in her favor. Her conclusory assertion that "she has [pleaded] facts . . . which satisfy the necessary elements for such relief" plainly fails to address any of the four factors. [ECF No. 49 at 13]. Accordingly, the Court denies the request for a preliminary injunction.

V. CONCLUSION

For the foregoing reasons, Plaintiff's request for a preliminary injunction is DENIED and Defendant's motion to dismiss [ECF No. 44] is GRANTED as to Count II and DENIED as to Counts I and III.

**SO ORDERED.**

March 14, 2018 /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE