UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIE CLAIRE AYOUB, | * |
| Plaintiff, | * |
| v. | * |
| | * Civil Action No. 15-cv-13218-ADB |
| CITIMORTGAGE, INC., | * |
| Defendant. | * |

**MEMORANDUM AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiff Marie Claire Ayoub ("Ayoub") filed this action against her mortgage servicer, Defendant CitiMortgage, Inc. ("Citi"), based on the denial of her applications for a loan modification. The Court dismissed one of Ayoub's claims prior to discovery pursuant to Federal Rule of Civil Procedure 12(b)(6). Ayoub v. CitiMortgage, Inc., No. 15-cv-13218-ADB, 2018 WL 1318919, at *8 (D. Mass. Mar. 14, 2018). Currently pending before the Court is Citi's motion for summary judgment on Ayoub's remaining claims under Massachusetts General Laws Chapter 93A ("Chapter 93A"). [ECF No. 79]. For the reasons discussed herein, the motion is GRANTED.

I. BACKGROUND

This factual summary is drawn from Citi's statement of undisputed material facts and from Ayoub's statement of disputed material facts. [ECF No. 81 ("SOF"); ECF No. 99-1 at 7–10].

On May 9, 2007, Ayoub took out a $293,600 loan from Prime Mortgage Financial, Inc. ("Prime") that was secured by a mortgage on her home at 169 Jackson Street in Methuen,

Massachusetts (the "Property"). [Corrected First Am. Compl., ECF No. 37 ("CFAC") ¶ 1]. The mortgage was originally held by Mortgage Electronic Registration Systems, Inc. ("MERS") as Prime's nominee. [SOF ¶ 1]. On August 13, 2013, MERS assigned the mortgage to Citi. [Id. ¶ 2].[1]

In 2011, Ayoub's husband, Hussein Youssef ("Youssef"), closed his full-time commercial auto repair business in Lawrence, Massachusetts, which had been a significant source of income for the couple. [ECF 99-1 at 8]. The closure created at least a temporary decline in their income, which Youssef attempted to remedy through part-time auto work that he performed from his home garage. [Id. at 8–9]. In addition to his auto-related self-employment, Youssef began working as a manager at Rabieh & Hati, which ran a gas station. [Id. at 8, 10]. Nevertheless, the couple's financial circumstances were such that Ayoub fell behind on her mortgage payments and, on February 16, 2013, applied to Citi for assistance under the Home Affordable Modification Program ("HAMP"). [SOF ¶ 4]. Ayoub informed Citi that she was a homemaker and therefore reliant on her husband's income. [ECF No. 81-8]. She further explained that she had become delinquent on her mortgage due to a hardship that began when Youssef's auto repair business suffered a 50 percent downturn and that his income from the gas station was insufficient to pay the mortgage. [Id.].

In July 2013, after considering the financial details provided by Ayoub, Citi denied her February 16, 2013 application. [SOF ¶¶ 12–13]. Citi explained that there was an "irreconcilable discrepancy" in the application and invited Ayoub to contact Citi to discuss the reason for the non-approval. [Id. ¶ 13]. The "irreconcilable discrepancy" was a reference to a significant

---

[1] On January 20, 2015, after Ayoub had already applied for three HAMP modifications, Citi assigned the mortgage to US Bank National Association as Trustee for CMALT REMIC SERIES 2007-A7-REMIC PASS-THROUGH CERTIFICATES SERIES 2007-A7. [SOF ¶ 3].

disparity between the $5,000 per month that Ayoub claimed Youssef was able to contribute to household expenses and the significantly lower income implied by his 2012 tax return. [Id. ¶¶ 6–9].

On November 12, 2013, Ayoub submitted a second application for a HAMP modification to Citi. [Id. ¶ 14]. The new application referenced Youssef's income from the Rabieh & Hati gas station but did not include any income from his repair business. [Id. ¶ 15]. On December 11, 2013, in response to a request from Citi, Youssef submitted a letter saying that he was not self-employed. [Id. ¶¶ 16–17].[2] Although Citi initially denied the November 2013 application because it found that Ayoub was barred from consideration for a loan modification due to misrepresentation of income in her prior modification request, Citi later considered the application on its merits and concluded that Youssef's income was insufficient to support a modification. [Id. ¶¶ 18–19]. Citi informed Ayoub that it was "unable to create an affordable payment equal to 31% of [their] reported monthly gross income without changing the terms of [the] loan beyond the requirements of the program" and that the "principal forbearance amount exceed[ed] the limit available under HAMP." [Id. ¶ 19].

On June 3, 2014, Ayoub submitted a third application for a HAMP modification. [Id. ¶ 20]. Although Youssef had not reported any self-employment income on his 2013 tax return, Ayoub claimed that that he was making $3,000 a month from his home auto-repair business. [Id. ¶¶ 21–22]. Citi requested additional documentation to verify the self-employment income, including personal tax returns and up-to-date profit and loss statements. [Id. ¶ 23]. In response, Ayoub submitted one-page profit and loss statements for the three-month periods ending June

---

[2] Ayoub challenges this assertion, claiming that Youssef meant only to indicate that he was not self-employed with respect to his work as a gas station manager. [ECF No. 99-1 at 9–10].

and July 2014 that purported to show exactly $3,000 in profits per month. [Id. ¶ 24]. On September 22, 2014, Citi requested a breakdown of business expenses, a profit and loss statement updated through August 2014, an explanation as to why the income was not reported in Youssef's personal tax returns, business tax returns for 2012 and 2013, and bank statements for the business. [Id. ¶ 25]. Youssef acknowledged in a September 30, 2014 letter that he operated the repair business "somewhat informally through [his] home garage and accept[ed] only cash," and that therefore "the self-employment income [is] not reflect[ed] on [his] tax returns." [Id. ¶ 27]. In January 2015, Citi informed Ayoub that her June 2014 application had been denied due to an "irreconcilable discrepancy" and invited her to call if she had questions. [Id. ¶ 29]. In response to a Chapter 93A demand letter, on April 16, 2015, Citi further explained that Ayoub had not supplied the requisite financial documents that Citi required in order to proceed, including profit and loss statements, banking records, and tax returns. [Id. ¶ 30].

On July 8, 2015, Ayoub filed this case in Essex County Superior Court, claiming that Citi had violated Chapter 93A through its efforts to delay and obstruct approval of Ayoub's applications for a HAMP loan modification ("Count I") and breach of the implied covenant of good faith and fair dealing ("Count II"). [ECF No. 1-1 ¶¶ 1, 13]. On August 24, 2015, Citi removed the case to this Court. [ECF No. 1 at 12–14]. In an effort to resolve this case, on September 12, 2015, Ayoub submitted a fourth HAMP application to Citi through counsel, which was denied on December 1, 2016. [SOF ¶¶ 31, 38]. On April 24, 2017, Ayoub filed her Corrected First Amended Complaint,[3] which added a claim asserting that Citi also violated Chapter 93A by failing to explain its denial of the fourth HAMP application ("Count III").

---

[3] The Corrected First Amended complaint amended Ayoub's Amended Complaint, which she filed on April 20, 2017. [ECF No. 35].

4

[CFAC ¶¶ 67–76; SOF ¶ 31]. As with her prior applications, the September 2015 application was denied given the incongruity between Youssef's purported self-employment income and his tax returns and financial records. [SOF ¶¶ 35–39].

On June 9, 2017, Citi filed a motion to dismiss the Corrected First Amended Complaint for failure to state a claim. [ECF No. 44]. The Court granted Citi's motion to dismiss Count II and denied the motion with respect to Counts I and III. [ECF No. 58].

On January 24, 2019, Citi filed a motion for summary judgment. [ECF Nos. 79, 80]. Ayoub obtained four extensions of time to oppose the motion for summary judgment. [ECF Nos. 85, 90, 93, 95]. She did so by maintaining that there was a real prospect of a successful mortgage modification, promising that she and her husband would amend the tax returns that apparently understated their income to help Citi verify relevant financial information, asserting that she had unexpectedly found a pre-approved buyer for the Property, and then stating that she needed more time to oppose the motion for summary judgment after the unexpected collapse of the planned sale and due to counsel's illness. See [ECF Nos. 83, 90, 92, 94]. On January 30, 2019, while the summary judgment motion was pending, Ayoub filed an "emergency motion" to address an "emergency matter" that required resolution on an "emergency basis." [ECF No. 88 (emphasis removed)]. Following receipt of this emergency motion, on February 6, 2019, the Court held a conference to address the issues raised by Plaintiff's motion. [ECF No. 89]. During the conference, Ayoub's counsel acknowledged that tax returns relevant to the modification effort likely required amendment but was unable to explain why the tax returns had not been updated before the hearing. See [ECF No. 90].

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)). "To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)).

Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002) (internal quotations and citation omitted). That is, the nonmoving party must set forth specific, material facts showing that there is a genuine

disagreement as to some material fact. One Parcel of Real Prop., 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Cochran, 328 F.3d at 6 (citation omitted). The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011). "The factual conflicts upon which he relies must be both genuine and material," Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 396–97 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation," Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

## III. CHAPTER 93A

To prevail on a Chapter 93A claim, a plaintiff must prove (1) "that a person who is engaged in trade or business committed an unfair or deceptive trade practice," and (2) "that the [plaintiff] suffered a loss of money or property as a result." Morris, 775 F. Supp. 2d at 259 (quoting Brandon Assocs. v. FailSafe Air Safety Sys. Corp., 384 F. Supp. 2d 442, 446 (D. Mass. 2005)).

### A. Unfair or Deceptive Conduct

Although there is no precise test for determining whether conduct is unfair or deceptive, "Massachusetts courts have laid out a number of helpful guideposts." Hanrahran v. Specialized Loan Servicing, LLC, 54 F. Supp. 3d 149, 154 (D. Mass. 2014). "Under Chapter 93A, an act or practice is deceptive 'if it possesses a tendency to deceive' and 'if it could reasonably be found to have caused a person to act differently from the way he [or she] otherwise would have acted.'"

7

Walsh v. TelTech Sys., Inc., 821 F.3d 155, 160 (1st Cir. 2016) (quoting Aspinall v. Philip Morris Cos., 813 N.E.2d 476, 486–87 (Mass. 2004)). "[A]n act or practice is unfair if it falls 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness;' 'is immoral, unethical, oppressive, or unscrupulous;' and 'causes substantial injury to consumers,'" and the "conduct must generally be of an egregious, non-negligent nature." Id. (quoting PMP Assocs. v. Globe Newspaper Co., 321 N.E.2d 915, 917 (Mass. 1975)). "Both the defendant's and the plaintiff's conduct, knowledge, and what they should have reasonably known may be factors in determining whether an act or practice is unfair." Hanrahran, 54 F. Supp. 3d at 154 (citing Jasty v. Wright Med. Tech., Inc., 528 F.3d 28, 38 (1st Cir. 2008)).

"HAMP violations can give rise to a viable [Chapter 93A] claim if the activity would be independently actionable under Chapter 93A as unfair and deceptive." Morris, 775 F. Supp. 2d at 256. Viewing the evidence in the light most favorable to the plaintiff, the relevant inquiry is whether: (1) she has shown that the defendant violated HAMP; (2) those violations would be independently actionable conduct under Chapter 93A even absent the violation of a statutory provision (*i.e.* are the violations unfair or deceptive); and (3) if the conduct is actionable, recovery pursuant to Chapter 93A is compatible with the "objectives and enforcement mechanisms" of HAMP. See Ording v. BAC Home Loans Servicing, LP, No. 10-10670, 2011 WL 99016, at *7 (D. Mass. Jan. 10, 2011).[4]

---

[4] With respect to the third prong, district courts in this Circuit have uniformly found that recovery under Chapter 93A is compatible with the objectives and enforcement mechanisms of HAMP. Ayoub v. CitiMortgage, Inc., No. 15-cv-13218-ADB, 2018 WL 1318919, at *4 n. 1 (D. Mass. Mar. 14, 2018); see also Regal v. Wells Fargo Bank, N.A., 205 F. Supp. 3d 195, 203 (D. Mass. 2016); Charest v. Fed. Nat'l Mortg. Ass'n, 9 F. Supp. 3d 114, 126 (D. Mass. 2014); Morris v. BAC Home Loans Servicing, L.P., 775 F. Supp. 2d 255, 262−63 (D. Mass. 2011).

Ayoub asserts that Citi did not have a sound basis for seeking supplemental income documentation or for denying her HAMP applications. [ECF No. 99-1 at 10–13]. Relatedly, she argues that Citi never explained the rationale for its denials. [Id.]. Citi has, however, shown sound reasons for the denial of the modification applications, including material inconsistencies in the financial information provided by Ayoub. [SOF ¶¶ 38–40]. Servicers are required to verify income, including income from self-employment. See HAMP Handbook for Servicers of Non-GSE Mortgages, Version 5.2 at 100–03 (Dec. 21, 2017).[5] Ayoub's assertions that her applications were denied for a reason which "does not exist in HAMP" and under false pretenses are therefore wholly unavailing. See [ECF No. 99-1 at 13]. Additionally, the record suggests that Ayoub understood why her applications were being denied given that she submitted several applications with modifications to the reported income in an apparent attempt to satisfy the applicable standards. [SOF ¶¶ 12, 14, 20–22].

Ayoub also claims that "Citi engaged in unfair and deceptive practices . . . when it issued a document request via e-mail to Plaintiff's counsel requesting documents which were already in the HAMP Application Package" and engaged in dilatory tactics when it failed to provide her with updates on her applications. [ECF No. 99-1 at 11–13]. As an initial matter, it was not unfair or deceptive for Citi to attempt to verify the relevant financial information where Ayoub repeatedly submitted HAMP applications that claimed income in amounts inconsistent with her prior applications and Youssef's tax returns such that they appeared potentially fraudulent. See supra at Section I. Further, even if the documents Ayoub submitted had been accurate, Citi would not have violated Chapter 93A merely by requesting documentation that had already been provided because such requests are not necessarily of an "egregious, non-negligent nature."

---

[5] https://www.hmpadmin.com/portal/programs/docs/hamp_servicer/mhahandbook_52.pdf.

Young v. Wells Fargo Bank, N.A., 828 F.3d 26, 34 (1st Cir. 2016) ("[R]ecordkeeping practices at most sound in negligence, and 'a negligent act or acts, alone, do not violate Chapter 93A.'" (quoting Klairmont v. Gainsboro Rest., Inc., 987 N.E.2d 1247, 1257 (Mass. 2013))). The asserted failures to respond to emails from Ayoub's counsel stating "please update me" also fail to show the sort of egregious, unfair, or deceptive conduct required for a Chapter 93A violation. See id.

Therefore, even viewing the evidence in the light most favorable to Ayoub, she has not shown that Citi engaged in unfair or deceptive conduct in violation of Chapter 93A.

**B.     Damages**

Even if Ayoub had shown that Citi engaged in unfair or deception acts in violation of Chapter 93A, the Court would likely grant Citi's motion because Ayoub has not shown that the alleged violations caused any damages. The Massachusetts Supreme Judicial Court has held that the invasion of a consumer's rights established by statute or regulation "may be a violation of [Chapter 93A,] . . . but the fact that there is such a violation does not necessarily mean the consumer has suffered an injury or a loss entitling her to at least nominal damages and attorney's fees . . . ." Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 745 (Mass. 2013). "[I]nstead, the violation of the legal right that has created the unfair or deceptive act or practice must cause the consumer some kind of separate, identifiable harm arising from the violation itself." Id.; see also Rhodes v. AIG Domestic Claims, Inc., 961 N.E.2d 1067, 1076 (Mass. 2012) ("[T]he plaintiff is required to prove that the defendant's unfair or deceptive act caused an adverse consequence or loss."). "[C]ausation—both 'factual' and 'proximate'—is a required element of a chapter 93A claim." Small Justice LLC v. Xcentric Ventures LLC, 873 F.3d 313, 325 (1st Cir. 2017); see Coulsey v. Option One Mortg. Corp., No. CV 15-10471-MGM, 2018 WL 6344195, at *10 (D.

Mass. Aug. 27, 2018) (dismissing claims against servicer and lender because their conduct was not the cause of expenses associated with repeatedly seeking modifications of delinquent mortgage).

Here, Ayoub has shown no economic loss that was caused by the alleged violations of Chapter 93A and therefore cannot sustain her Chapter 93A claims. Ayoub claims, without citation or supporting documentation, that she has lost $115,000 in home equity since 2013 and incurred $30,000 in legal fees. [ECF No. 99-1 at 14]. The attorney's fees that Ayoub references cannot reasonably be said to flow from any alleged violation of HAMP, and instead appear to have been incurred in a largely successful effort to prolong her occupation of the Property. Additionally, even accepting that Ayoub has lost $115,000 in equity, she has not shown that her loss resulted either factually or proximally from the alleged violations of HAMP and Chapter 93A because she has not shown that she should have been approved for a loan modification or that a more complete explanation of the rationale for her non-approval would have resulted in a lesser economic loss than she now claims to have suffered.

## IV. CONCLUSION

Accordingly, Citi's motion for summary judgment [ECF No. 79] is <u>GRANTED</u>.

**SO ORDERED.**

June 17, 2019  /s/ Allison D. Burroughs
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE